**Affirmed and Opinion filed April 16, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00536-CR

---

**ELBERT  JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16-CR-1973**

---

## OPINION

A jury convicted appellant, Elbert Jones, III, of family violence assault enhanced with a prior conviction for family violence assault. *See* Tex. Penal Code § 22.01(b)(2). The State also alleged that appellant had been previously convicted of two felony offenses. At the conclusion of the punishment phase of appellant's trial, the trial court found the two enhancement paragraphs in the indictment true and assessed appellant's punishment at thirty years in prison. *See id.* at § 12.42(d).

Appellant raises two issues on appeal. In his first issue, appellant argues that the trial court abused its discretion when it admitted records from the State of Missouri documenting his prior felony convictions into evidence. Appellant argues in his second issue that he received ineffective assistance of counsel during the punishment phase of his trial because his trial counsel offered no mitigating evidence. We affirm.

## BACKGROUND

Because appellant does not challenge the sufficiency of the evidence supporting his family violence assault conviction, we include only those facts necessary to address the two issues that he does raise in this appeal.

Appellant was the complainant's source for synthetic marijuana. They entered into an intimate relationship and began living together. According to the complainant, they lived together for about a year. The complainant described her relationship with appellant as "horrible, demeaning, very bad," and she ended the relationship as a result. The complainant moved to a different location but appellant eventually found her. Appellant came to the rooming house where the complainant lived, and he began yelling and banging on the door. The complainant initially refused to open the door, but eventually she relented and opened the door because the noise was "disturbing the peace of the neighborhood." When the complainant opened the door, appellant grabbed her by the throat and told her he was going to kill her if she did not take him back. According to the complainant, in addition to squeezing her throat so hard that she could barely breathe, appellant hit her in the face and head. The complainant believed that she was going to die. Appellant let the complainant go and fled the scene when someone came around the corner. The complainant reported the incident to the police and appellant was eventually arrested and charged with family violence

2

assault.  The State alleged that appellant had previously been convicted of family violence assault in 2012.  Appellant went to trial before a jury, which found him guilty.

The case then proceeded to a bench trial on punishment.  The State sought to enhance appellant's punishment by including two enhancement paragraphs in appellant's indictment.  The enhancement paragraphs alleged that appellant had been previously convicted of two felonies in Missouri.[1]  The State initially reoffered all evidence that had been admitted during the guilt/innocence phase at the beginning of the punishment phase of appellant's trial.  This evidence included State's Exhibit 6, which had been admitted without objection during the guilt/innocence phase of appellant's trial.  Appellant once again did not object to its admission.  State's Exhibit 6 is a fingerprint card for appellant that was taken during appellant's trial.  It states that appellant's date of birth is June 26, 1965.

The State then offered State's Exhibit 7, a compilation of documents that it referred to as "a certified pen packet from the state of Missouri," into evidence. State's Exhibit 7 contains a total of thirteen pages, some of which are not relevant to this appeal.  Included in State's Exhibit 7 is a document containing a set of

---

[1] The first enhancement provides:

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense (hereinafter styled the primary offense), on the 18th day of November, 1994, in cause number 941-0733 in the 22nd Judicial Circuit Court of St. Louis, Missouri the defendant was finally convicted of the felony of Robbery 2nd Degree.

The second enhancement provides:

And it is further presented in and to said Court that, prior to the commission of the primary offense, and after the conviction in cause number 941-0733 was final, the defendant committed the felony offense of Stealing $500 or More and was finally convicted on the 5th day of June, 2009, in cause number 07SL-CR06326 in the 21st Circuit Court of St. Louis County, Missouri.

fingerprints taken November 28, 1994 from Elbert Jones, No. 511135. Appellant objected to the admission of State's Exhibit 7 because, in appellant's view, the State had not properly authenticated the exhibit and also because it was hearsay. The trial court overruled appellant's objections and admitted State's Exhibit 7.

The State then recalled Deputy Michael Bell of the Galveston County Sheriff's Department to testify.[2] Deputy Bell testified that he compared appellant's known fingerprints on State's Exhibit 6 with the fingerprints found in State's Exhibit 7 and he opined that the thumb prints on both exhibits "were produced by the same finger."

Soon thereafter, the trial court observed that State's Exhibit 7 did not contain judgments. The prosecutor then explained the content of State's Exhibit 7. State's Exhibit 7 begins with an affidavit from the Department of Corrections for the State of Missouri, and it is titled, "Certified Transcript of Serial Records." The affidavit provides that the exhibit relates to offender Elbert Jones, with a Missouri Department of Corrections number of 511135. The affidavit then continues:

> State of Missouri,
>
> County of Callaway
>
> I, Melissa Dews, hereby certify:
>
> That I am the Corrections Records Officer I of the Fulton Reception-Diagnostic Center, Missouri Department of Corrections, Division of Adult Institutions of the State of Missouri situated at the County and State aforesaid; that in my legal custody, as such Corrections Records Officer I, are the original files and records of persons heretofore committed to the Missouri Department of Corrections, Division of Adult Institutions that the foregoing is a true and correct copy of the record of:

---

[2] Deputy Bell testified on his qualifications as a fingerprint expert with the Galveston County Sheriff's Department during the guilt/innocence phase of appellant's trial. Appellant did not object to Deputy Bell testifying as a fingerprint expert.

4

Offender Name:　　　　　Elbert Jones　　　　　DOC#: #511135

> As shown by the record books, in the Central Records of the Fulton Reception Diagnostic Center, of the Missouri Department of Corrections, Division of Adult Institutions.

Melissa Dews signed the affidavit and she identified herself as the Corrections Records Officer I, for Fulton Reception-Diagnostic Center. Dews swore to the affidavit before Christina Ostrander, a Missouri notary public, on August 10, 2016. The affidavit includes Ostrander's notary public seal for the State of Missouri and the County of Callaway.

The second page of State's Exhibit 7 includes Elbert Jones' fingerprints and signature. It also identifies Jones as a black male with Missouri Department of Corrections number 511135. Page three of State's Exhibit 7 includes Jones's photograph, which also shows his Missouri Department of Corrections number, 511135. Page three of the exhibit includes details of Jones's description as well as his date of birth—June 26, 1965.

Pages eight through ten of Exhibit 7, all styled "Department of Corrections Adult Institutions Face Sheet," contain the details of several of appellant's "PRESENT CONVICTIONS" listed as "Seq: 1" through "Seq: 9." One of the offenses, listed as "Seq: 3," details appellant's conviction in cause number 941-0733 for the offense of "ROBBERY 2ND DEGREE," with an offense date of January 13, 1994. The exhibit states that appellant's sentence for the offense was ten years and that it was assessed on November 18, 1994 in St. Louis City. The State argued that this conviction was consistent with the allegations set forth in the First Enhancement Paragraph of appellant's indictment in the present case.

The sixth page of Exhibit 7, also styled "Department of Corrections Adult Institutions Face Sheet," contains the details of another of appellant's "PRESENT CONVICTIONS." Page six details appellant's conviction in cause number 07SL-

5

CR06326 for the offense of "STEALING 500 OR MORE," with an offense date of August 23, 2007, in St. Louis County. The sentence for the offense was four years. The State argued that this conviction was consistent with the allegations set forth in the Second Enhancement Paragraph of appellant's indictment in the present case.[3]

After the State rested, the trial court asked appellant's attorney if he wished to put on any evidence. Appellant's attorney replied that "we have no evidence to put on." Following closing arguments, the trial court sentenced appellant to thirty years in prison. This appeal followed.

## ANALYSIS

Appellant raises two issue on appeal. We address them in order.

## I. The trial court did not abuse its discretion when it admitted State's Exhibit 7.

Appellant contends in his first issue that the trial court abused its discretion when it admitted State's Exhibit 7 during the punishment phase of his trial because the State failed to establish the authenticity of the documents contained in the exhibit.[4]

---

[3] At this point, appellant renewed his authenticity and hearsay objections. While recognizing that the trial court had "already ruled on it," appellant's attorney went on to raise a new objection, contending that the State had not "properly proved up the foreign law in the state of Missouri." While the trial court overruled appellant's objection, we conclude that, to the extent appellant argues on appeal that the trial court abused its discretion when it admitted State's Exhibit 7 because the State failed to offer "proof of Missouri's evidentiary requirements," we need not address it because the exhibit had already been admitted prior to the time appellant objected based on the State's alleged failure to prove Missouri law. Tex. R. App. P. 33.1(a)(1)(A); s*ee Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999) (stating that an objection to admission of evidence must be made as soon as the grounds for complaint should be apparent and the fact "that subsequent events may cause a ground for complaint to become *more apparent* does not render timely an otherwise untimely complaint.") (emphasis in original).

[4] While appellant timely lodged a hearsay objection to the admission of State's Exhibit 7, he has not included any argument in his appellate brief addressing that contention, accordingly, it is waived. *See* Tex. R. App. P. 38.1(i).

### A. Standard of review and applicable law

Under the Texas Penal Code, if, during the punishment phase of trial, the State proves that the defendant has been previously finally convicted of two felony offenses, then the defendant's minimum punishment is enhanced to 25 years confinement. Tex. Penal Code § 12.42(d). To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State,* 220 S.W.3d 919, 921–22 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. There is no "best evidence" rule in Texas that requires the fact of a prior conviction be proven with any document, much less any specific document. *Id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 922.

Authentication of evidence is a condition precedent to its admissibility. *See* Tex. R. Evid. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The proponent of the evidence must "make a threshold showing that would be 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Tienda*, 358 S.W.3d at 638 (quoting Tex. R. Evid. 901(a)); *Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991); *see also Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). Rule of Evidence 901 does not erect a high hurdle, and that hurdle may be cleared through the use of circumstantial

evidence. *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.). The proponent of the evidence does not need "to rule out all possibilities inconsistent with authenticity, or prove beyond any doubt that the evidence is what it purports to be." *Campbell*, 382 S.W.3d at 549. The proponent must only produce sufficient evidence that a reasonable fact finder could properly find genuineness. *Tienda*, 358 S.W.3d at 638.

Rules of Evidence 901 and 902 govern the authentication requirement. Rule of Evidence 901(b) provides an illustrative, though not exhaustive, list of examples of extrinsic evidence that satisfies the requirement of authentication. *See* Tex. R. Evid. 901(b)(1)–(10); *Reed*, 811 S.W.2d at 586. Rule 902 identifies certain evidence as self-authenticating and dispenses with Rule 901's requirement of extrinsic evidence of authenticity for that evidence. *See* Tex. R. Evid. 902(1)–(10). A document may be authenticated under either Texas Rule of Evidence 901 or 902 and need not be authenticated under both. *See Reed*, 811 S.W.2d at 586; *Haas v. State*, 494 S.W.3d 819, 823 (Tex. App.—Houston [14th Dist.] 2016, no pet.). In addition, meeting the requirements of one part of Rule 902 establishes the documents are self-authenticated.

We review a trial court's decision to admit evidence over an authentication objection for an abuse of discretion. *Tienda*, 358 S.W.3d at 638; *Hunter v. State*, 513 S.W.3d 638, 640 (Tex. App.—Houston [14th Dist.] 2016, no pet.). If the trial court's ruling is within the zone of reasonable disagreement, we will not interfere. *Tienda*, 358 S.W.3d at 638; *Hunter*, 513 S.W.3d at 640; *Turnbull v. State*, No. 03-11-00118-CR, 2013 WL 5925543, at *3 (Tex. App.—Austin Oct. 24, 2013, pet. ref'd) (mem. op., not designated for publication).

**B.    State's Exhibit 7 was self-authenticating pursuant to Texas Rule of Evidence 902(4).**

In his first issue appellant contends that the trial court abused its discretion when it admitted State's Exhibit 7 because, in his view, the Missouri pen packet did not meet the self-authentication requirements found in three parts of Texas Rule of Evidence 902. Specifically, appellant asserts that State's Exhibit 7 did not meet the requirements found in Rule 902(1) addressing domestic public records that are sealed and signed; Rule 902(2) addressing domestic public documents that are not sealed but are signed and certified; nor Rule 902(10)(B) addressing business records accompanied by an affidavit. We need not consider whether State's Exhibit 7 meets the requirements in those sections of Rule 902 because we conclude that it meets the requirements for self-authentication found in Rule 902(4) of the Texas Rules of Evidence.

Rule 902 allows for self-authentication of copies of "an official record–or a copy of a document that was recorded or filed in a public office as authorized by law" if the copy is certified as correct by the custodian or another person authorized to make the certification. Tex. R. Evid. 902(4). The evidence rules define "record" to include "a memorandum, report, or data compilation." Tex. R. Evid. 101(h)(4).

Here, State's Exhibit 7 is a report or a data compilation of appellant's prior convictions in the State of Missouri. The information found in State's Exhibit 7 was provided by Melissa Dews, Corrections Records Officer I at the Missouri Department of Corrections. Dews swore that she had "legal custody" of "the original files and records of persons" committed to the Missouri Department of Corrections Fulton Reception Diagnostic Center. As a result, she is a "custodian" of those records as envisaged by Rule 902(4). Dews further swore that the pages contained in the exhibit constituted a "true and correct copy of the record of" appellant. Finally, Dews swore that this record was kept in the "record books" of

9

the Missouri Department of Corrections. As mentioned above, Dews' affidavit was signed and stamped by a Missouri notary public. We conclude State's Exhibit 7 meets the requirements of Rule 902(4) and is self-authenticating pursuant to that rule.[5] *See Flowers*, 220 S.W.3d at 922–23 (stating that, in case involving prior Texas conviction, "a computer-generated compilation of information setting out the specifics of a criminal conviction that is certified as correct by the county or district clerk of the court in which the conviction was obtained is admissible under rule 902."). Because State's Exhibit 7 was self-authenticating, we hold that the trial court did not abuse its discretion when it overruled appellant's authenticity objection. We overrule appellant's first issue.

## II. Appellant has not shown that he received ineffective assistance of counsel.

Appellant argues in his second issue that his trial counsel rendered ineffective assistance of counsel because he did not offer mitigating evidence during the punishment phase of his trial.

### A. Standard of review and applicable law

In reviewing claims of ineffective assistance of counsel, we apply a two-part test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that: (1) his trial counsel's representation was deficient in that it fell below the

---

[5] Appellant relies on *Banks v. State* in support of his argument that the trial court abused its discretion when it admitted State's Exhibit 7. 158 S.W.3d 649 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We conclude that *Banks* does not control the outcome here because in *Banks*, unlike here, the exhibit at issue did "not contain any certification by an Illinois official." *Id.* at 653. While the court in *Banks* did also point out the lack of a seal as a basis for concluding the State did not meet the self-authentication requirements of Rule 902 in that case, Rule 902(4) does not require a seal. Tex. R. Evid. 902(4).

10

standard of prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.*

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Reasonably effective assistance of counsel does not mean error-free representation, however. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, we consider the totality of the representation and the particular circumstances of the case. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740. It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 143. Instead, for an appellate court to conclude that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142. When such direct evidence is not available, we will assume trial counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143.

11

Trial counsel ordinarily should be afforded an opportunity to explain her actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Unless trial counsel has had an opportunity to give specific explanations for his decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective-assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When no reasonable trial strategy could justify trial counsel's conduct, however, trial counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). In other words, when trial counsel has not had an opportunity to explain his actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

**B.    Appellant has not established that his trial counsel performed deficiently.**

In the present case, the trial court asked appellant's attorney if he wished to put on any evidence. Appellant's attorney replied that "we have no evidence to put on." Appellant contends on appeal that this failure to offer mitigating evidence establishes that his attorney performed deficiently. No motion for new trial was filed, therefore the record is silent on why appellant's trial counsel did not offer mitigating evidence. When the record is silent as to trial counsel's strategy, we will not conclude the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We conclude that this case does not present such a situation.

12

We cannot assume from the fact that appellant's trial counsel did not present evidence during the punishment phase of appellant's trial, that his trial counsel did not use sound trial strategy in taking that course, because the record does not show whether trial counsel intentionally declined to present such evidence. *See Bone*, 77 S.W.3d at 834 n.21 ("Neither the court of appeals nor this Court has any idea whether such evidence existed, whether it would be favorable, or whether counsel intentionally declined to" introduce it.). We may not assume a lack of sound trial strategy where the record is silent regarding trial counsel's strategy. *See id.* at 836 ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent . . . . [A] defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission."). Accordingly, we conclude that appellant has failed to satisfy the first prong of *Strickland*. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.


/s/     Jerry Zimmerer
Justice


Panel consists of Justices Christopher, Zimmerer, and Hassan.
Publish — TEX. R. APP. P. 47.2(b).