# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00405-CR

---

**Reymundo Montiel, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-16-0379-E, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Reymundo Montiel was charged with two counts of aggravated sexual assault involving his thirteen-year-old niece B.M. and two counts of indecency with a child by contact involving his ten-year-old niece Y.M. *See* Tex. Penal Code §§ 21.11, 22.021. The indictment also contained four enhancement paragraphs alleging that Montiel was previously convicted of four counts of aggravated battery in another state. *See id.* § 12.42(d). The jury convicted Montiel of all four charges and found that he had previously been convicted of two sequential felony offenses, and Montiel was sentenced to 99 years' imprisonment for both aggravated-sexual-assault charges and to 60 years' imprisonment for both indecency charges. *See id.* On appeal, Montiel contends that the trial court erred during the guilt-innocence phase by allowing the outcry witnesses to testify, prohibiting him from cross-examining B.M. about the contents of her juvenile record, and denying his request to question the prosecutor as a witness. Montiel further argues that the evidence supporting the enhancement allegations was insufficient to

support the jury's findings and that the trial court erred during the punishment phase by admitting evidence of prior convictions and allowing an unqualified witness to testify as a fingerprint-identification expert. We will affirm the trial court's judgments of conviction.

## BACKGROUND

Montiel moved into his sister's home and lived with her and her children, including B.M. and Y.M. After Montiel had lived in the home for some time, B.M. informed her aunt Maria Garcia that Montiel had sexually abused her, and Garcia and B.M. informed B.M.'s father about the abuse. Around this same time, B.M. was expelled from her school and enrolled at the Juvenile Justice Alternative Education Program, which was run by the Hays County Juvenile Probation Department. After being enrolled for a few months, B.M. informed several school officials that Montiel had sexually abused her. Once the officials learned about the abuse, they called the police and Child Protective Services. Subsequently, Vanessa Paulini conducted forensic interviews for B.M. and Y.M. at a child advocacy center. The police arrested Montiel, and he was charged with two counts of aggravated sexual assault and two counts of indecency with a child by contact. The indictment alleged that Montiel had been convicted of four prior felony offenses in Illinois.

Before trial, Garcia was designated as the outcry witness for the offenses involving B.M., and Paulini was designated as the outcry witness for the offenses involving Y.M. At trial, B.M., Y.M., their mother, Garcia, Paulini, an employee of Child Protective Services, several police officers, and expert witnesses testified. After considering the evidence presented at trial, the jury found Montiel guilty of all four charges.

At the start of the punishment phase, Montiel pleaded "not true" to the enhancement allegations in the indictment. In the punishment phase, several witnesses testified,

2

including Matthew Grantham, a Hays County District Attorney's Office investigator. Grantham was designated as an expert in fingerprint identification. During Grantham's testimony, the following exhibits were admitted into evidence: Montiel's booking sheet for the current offenses, a criminal history from Illinois, multiple judgments of conviction from Illinois, and a pen packet from Illinois. At the end of the punishment phase, the jury found that Montiel had previously been convicted of two sequential felony offenses and sentenced him to 99 years' imprisonment for the aggravated-sexual-assault convictions and to 60 years' imprisonment for the indecency convictions.

Montiel appeals the trial court's judgments of conviction.

## DISCUSSION

In his first issue on appeal, Montiel asserts that the trial court erred by admitting the testimony of the two outcry witnesses. In his second issue on appeal, Montiel contends that the trial court erred by prohibiting him from cross-examining B.M. regarding her juvenile record and by preventing him from questioning the prosecutor. In his final issue, Montiel argues that the evidence supporting the jury's findings regarding the enhancement allegations was insufficient, that the trial court erred by admitting during the punishment phase exhibits pertaining to criminal convictions from another state, and that the trial court erred by allowing Grantham to testify as an expert witness.

### Outcry Witness Testimony

During a hearing outside the presence of the jury, the State indicated that it wanted to call an outcry witness for each of the victims. First, the State informed the trial court that it intended to call B.M.'s aunt, Garcia, to testify as an outcry witness regarding B.M.'s

3

statements to her. Next, the State informed the trial court that it intended to call Paulini to testify regarding Y.M's outcry to her during the forensic interview. During the hearing, both Garcia and Paulini testified.

In her testimony, Garcia explained that B.M. made an outcry to her by stating that Montiel "raped her" but that B.M. did not provide any additional information regarding the allegations. Next, Paulini testified that during the forensic interview, Y.M. stated that Montiel "touched her in a nasty way" when she was asleep in her room, motioned to her private area when discussing where Montiel touched her, said Montiel put his hand inside her underwear and touched "it" with his fingers, related that Montiel also "swiped" her private area with his hand, and stated that Montiel touched her chest area under her bra. In her testimony, Paulini also stated that she displayed a drawing of a child during the interview and asked Y.M. to point to the areas that Montiel touched and that Y.M. pointed to an area that was "outside of th[e] line" where the vagina was located on the drawing and to the nipple area. After hearing Garcia's and Paulini's testimonies and Montiel's objections, the trial court overruled Montiel's objections and concluded that both witnesses could testify as outcry witnesses.

On appeal, Montiel recognizes that article 38.072 of the Code of Criminal Procedure specifies that an outcry statement is not inadmissible on hearsay grounds in cases involving certain sexual offenses against children if the statement "describe[s] . . . the alleged offense," is "made by the child," and is "made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense," and if the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." *See* Tex. Code Crim.

Proc. art. 38.072, §§ 1, 2; *see also* Tex. R. Evid. 801 (defining hearsay). However, Montiel contends that the testimony from Garcia and Paulini was too general to qualify as an outcry.

Regarding Garcia's outcry testimony, Montiel asserts that Garcia generally testified that B.M. said that he raped her but did not provide any additional details and that Garcia's testimony did not show whether B.M. understood what the word rape means. Similarly, Montiel argues that Paulini's testimony was not specific enough to tell whether an offense occurred. On the contrary, Montiel contends that Paulini's testimony revealed that Y.M. pointed to the general chest area and to an area outside the vagina on the drawing used in the interview and urges that this testimony might refer to touching that the Penal Code does not prohibit. Accordingly, Montiel asserts that Garcia and Paulini were not proper outcry witnesses because their testimonies indicated that the statements from B.M. and Y.M. were no more than words giving "a general allusion that something in the area of sexual abuse was going on." *See Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *see also Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) (explaining that proper outcry witness is first adult to whom alleged victim relates "how, when, and where" abuse occurred (quoting *Hanson v. State*, 180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet.))).

Trial courts have "broad discretion" when deciding what witnesses qualify as outcry witnesses, and appellate courts review those determinations for an abuse of discretion. *Garcia*, 792 S.W.2d at 91-92; *see Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd); *see also Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd) (noting that prior cases "establish the difficulty that can arise in identifying the proper outcry witness, and the broad discretion of district courts in making this determination"). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly

5

wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). When reviewing a trial court's ruling on the admissibility of an outcry statement, appellate courts consider the evidence that was before the trial court at the time of its ruling. *See Whitten v. State*, No. 07-12-00200-CR, 2013 WL 4711198, at *5 (Tex. App.— Amarillo Aug. 27, 2013, pet. ref'd) (mem. op., not designated for publication). "If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

"The admission of inadmissible hearsay constitutes nonconstitutional error." *See Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Accordingly, the error must be disregarded unless it affected a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). Any error stemming from the admission of inadmissible hearsay "will be considered harmless if, after examining the record as a whole, we are reasonably assured that the error did not influence the jury's verdict or had but a slight effect." *Linney v. State*, 401 S.W.3d 764, 780 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Moreover, courts have consistently held that any error from the admission of an outcry witness's testimony is harmless if the same evidence is admitted into evidence through other testimony without objection. *See Moody v. State*, 543 S.W.3d 309, 314 (Tex. App.—Eastland 2017, pet. ref'd) (mem. op.) (concluding that defendant was not harmed because "victim testified before the jury without objection to the same facts"); *Gonzales v. State*, 477 S.W.3d 475, 479 (Tex. App.—Fort Worth 2015, pet. ref'd) (determining that any error was harmless where victim provided testimony corroborating outcry witness's testimony).

"We need not determine whether the trial court" abused its discretion by allowing Garcia and Paulini to testify as outcry witnesses "because we conclude that any error" would have been harmless. *See Hernandez v. State*, No. 05-12-01118-CR, 2014 WL 1178303, at *3 (Tex. App.—Dallas Mar. 21, 2014, no pet.) (mem. op., not designated for publication). During the trial, B.M. and Y.M. testified extensively regarding the abuse and provided even more details than either of the outcry witnesses did. *Cf. Gonzales*, 477 S.W.3d at 479 (noting when explaining that error was harmless that victim "provided greater detail" than outcry witness). In particular, B.M. testified that Montiel entered her bedroom at night using his cellphone as a light, got into her bed, removed her shorts, got on top of her while she was on her back, inserted his penis into her vagina, and began "humping" her. Next, B.M. explained that Montiel got up from the bed and left the room after he "finished" and that there was a sticky substance on her leg. In addition, B.M. testified that Montiel engaged in the same conduct on other occasions but that she did not remember how many times. Regarding other incidents, B.M. explained that Montiel removed her clothing while she was in the living room and inserted his penis into her vagina and that he forced her to place her mouth "on his private part" when they were near the bathroom. In her testimony, Y.M. related that Montiel woke her up one night by putting his hand inside her underwear, that she felt his hand on her vagina, and that his fingers were making a circular motion. Further, Y.M. testified that Montiel also touched her nipple under her bra. Moreover, B.M. and Y.M.'s mother testified during the trial that Montiel admitted that he had sex with B.M., was concerned that she might "be pregnant by him," and wanted B.M. to have an abortion if she was pregnant.

Additionally, recordings of the forensic interviews for B.M. and Y.M. were admitted into evidence during Paulini's testimony, and Montiel stated that he had no objection to

7

their admission and that he wanted the recordings admitted "for trial purposes." *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (stating general rule "that error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection"). On the recording of B.M.'s interview, B.M. related that Montiel "raped" her more than one time when she was thirteen. During the interview, B.M. also wrote down what Montiel did and specified that he "took off [her] shorts & underwear and got on top of [her] and raped [her]." After writing that statement, B.M. explained during the interview that Montiel's "private part" "on the front part of his body" was placed inside her "private part" and that this occurred more than once. In Y.M.'s interview, she related that Montiel started touching her while she was asleep on her back, that he touched her private area with his fingers inside her underwear, and that he touched her chest under her bra. In addition, when asked to show on a drawing where Montiel touched her, Y.M. pointed to the breast area and the genital area.

Accordingly, even if the trial court abused its discretion by allowing Garcia and Paulini to testify as outcry witnesses, we would conclude that Montiel was not harmed. *See Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (determining that error in admission of outcry witness's hearsay testimony was harmless when similar evidence was presented without objection through complainant, doctor, and medical records); *see also Merrit v. State*, 529 S.W.3d 549, 557 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (observing that any error from admission of forensic interviewer's testimony was harmless where police officer and complainant gave testimony that was more detailed than forensic interviewer's testimony); Tex. R. App. P. 44.2(b) (requiring appellate courts to disregard nonconstitutional errors that do not affect substantial rights).

8

For these reasons, we overrule Montiel's first issue on appeal.

**Juvenile Record and Questioning the Prosecutor**

In his second issue on appeal, Montiel argues that the trial court erred by denying his request to cross-examine B.M. regarding the contents of her juvenile record and his request to question the prosecutor as a material witness.

*Juvenile Record*

Before trial, Montiel informed the trial court that he wanted to cross-examine B.M. regarding her record from the Juvenile Justice Alternative Education Program run by the Hays County Juvenile Probation Department. Montiel asserted that B.M. had been placed in the alternative school program because of her disciplinary issues and because she had been expelled from her prior school, that her disciplinary issues continued at the alternative program, and that after she had been informed that she would be suffering additional disciplinary consequences due to her continued misbehavior, she told school officials that Montiel had sexually abused her. Accordingly, Montiel urged that he should be able to cross-examine B.M. regarding her juvenile record because it was relevant to whether she had a motive to fabricate the allegations to "take the heat off" herself when she told school officials about the abuse in September 2015. After listening to the parties' arguments, the trial court ruled that Montiel could not cross-examine B.M. regarding the contents of the record because there was no logical connection between the juvenile record and a motive to lie about Montiel.

On appeal, Montiel similarly argues that he should have been able to cross-examine B.M. regarding her juvenile record because the timing of her outcry at school as well as the mounting trouble that she was facing supported his defensive theory that she fabricated the

9

claims to deflect attention away from her misbehavior. Moreover, Montiel highlights that the Supreme Court and the Court of Criminal Appeals have both explained that the Confrontation Clause allows for the admission of evidence regarding a juvenile's record in certain circumstances. *See Davis v. Alaska*, 415 U.S. 308 (1974); *Irby v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010).

Under the Confrontation Clause, a defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The purpose behind the Clause is "to secure for the opposing party the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson*, 490 S.W.3d at 909 (quoting *Davis*, 415 U.S. at 316). The Confrontation Clause allows a party to attack the credibility of witnesses "or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

However, "the right to cross-examine is not unqualified." *Johnson*, 490 S.W.3d at 909. Trial courts may limit the scope and extent of cross-examination provided that the limits do not infringe the guarantee of "an *opportunity* for effective cross-examination." *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Trial courts have "wide latitude" under the Confrontation Clause to impose limits on cross-examination for multiple reasons, including when the cross-examination would be "only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also Castle v. State*, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988) (noting that "the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion"); *see also* Tex. R. Evid. 401 (stating that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action"). Accordingly, appellate courts review a trial court's ruling on the admissibility of

evidence for an abuse of discretion. *Johnson*, 490 S.W.3d at 908; *see also id.* at 909 (stating that trial court "can abuse [its] discretion by excluding admissible evidence that is offered by the defendant to demonstrate the complainant's motive to falsely accuse him of molestation").

"In Texas, as in most jurisdictions, juvenile criminal records and adjudications are not admissible to impeach the general credibility of a testifying witness, even though the juvenile may be on probation and is technically in a 'vulnerable relationship' with the State throughout that probationary period." *Irby*, 327 S.W.3d at 147. Although the Rules of Evidence expressly forbid the use of these types of records, Rule 609 contains an exception explaining that this type of evidence may be admissible when required by the United States Constitution. *See* Tex. R. Evid. 609. When discussing the interplay between these types of evidentiary prohibitions and constitutional guarantees, the Supreme Court stated that evidentiary rules protecting the confidentiality of a juvenile offender's record cannot supplant the constitutional right to cross-examine an adverse witness for bias. *Davis*, 415 U.S. at 320; *see also id.* at 321 (Stewart, J., concurring) (observing that Supreme Court's holding was based on "the circumstances of this case" and does not suggest "that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications"). More recently, the Court of Criminal Appeals has clarified the nature of the interplay by explaining that "[e]vidence that a witness is on probation, is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent some plausible connection between that fact and the witness's testimony." *Irby*, 327 S.W.3d at 149.

In this case, although Montiel asserted that B.M.'s facing potential disciplinary actions might have motivated her to direct attention away from herself, he did not explain why

she would have chosen to make false sexual-assault accusations against him. *Cf. Hammer*, 296 S.W.3d at 567-69 (determining that trial court abused its discretion by excluding evidence indicating that complainant was angry with defendant (her father) for taking her to hospital for sexual-assault examination after she spent night away from home because that evidence was strong support for defendant's theory that she had motive to falsely accuse him of sexual abuse).

In any event, the timing of the accusation was critical, and if B.M. had motive to fabricate the allegations, she would have had that motive the first time that she reported the abuse. *See Irby*, 327 S.W.3d at 153. Before the trial court made its ruling regarding B.M.'s record, the outcry-witness hearing was held. During that hearing, evidence was presented demonstrating that B.M. during the summer had already told her aunt Garcia, her father, and other members of her family about the abuse before she mentioned the abuse to the school officials in September 2015. *See id.* at 153-54 (rejecting argument that defendant should be able to cross-examine victim about his juvenile deferred adjudication on theory that victim fabricated abuse allegations to his mother to avoid getting into trouble where victim had already told other people before telling his mother); *see also Johnson*, 490 S.W.3d at 911-13 (explaining that evidence that juvenile victim in sexual-abuse case had been charged with sexually assaulting his sister was relevant and should have been admitted, in part, because evidence showed that juvenile's parents found out about his abusing his sister during "the same period of time" that juvenile alleged that defendant had been sexually abusing him).

Accordingly, we conclude that the trial court did not abuse its discretion by concluding that Montiel failed to make a logical connection between B.M.'s allegations and her juvenile record and, therefore, by prohibiting cross-examination regarding her record as irrelevant. *See Irby*, 327 S.W.3d at 154.

12

*Questioning the Prosecutor*

In the next set of arguments in his second issue, Montiel contends that the trial court erred by denying his request to question the prosecutor in this case. During B.M.'s testimony, she stated that she did not tell the forensic examiner about an incident involving oral sex because "it's disgusting" but that she told the prosecutor about that incident before trial. After B.M. made that statement, Montiel requested that he be given the opportunity to question the prosecutor because she was a witness. The trial court denied the request. On appeal, Montiel argues that the trial court erred because the prosecutor was a material witness in this case. More specifically, Montiel highlights that B.M. made no mention of oral sex during her forensic interview and contends that the prosecutor was a witness to B.M.'s inconsistent statement regarding oral sex made shortly before trial.

Because Montiel is challenging the trial court's evidentiary ruling, we review that ruling for an abuse of discretion. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). Allowing a party to call opposing counsel as a witness during a criminal trial "invariably confus[es] the distinctions between advocate and witness" and "argument and testimony." *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975). For that reason, Texas law generally "does not permit parties to call their opposing counsel to testify as a witness." *Garrett v. State*, No. 14-08-00413-CR, 2009 WL 2365621, at *2 (Tex. App.—Houston [14th Dist.] Aug. 4, 2009, no pet.) (mem. op., not designated for publication); *see also Brown v. State*, 921 S.W.2d 227, 231 (Tex. Crim. App. 1996) (Keller, J., concurring) (explaining that "[t]he concepts of due process and fundamental fairness require a separation between the State's advocates and its witnesses"). In fact, the Court of Criminal Appeals has explained that this type of questioning should only be allowed where "there is no feasible alternative for obtaining

13

and presenting the information to the jury" and where "the testimony is essential, not merely relevant." *Flores v. State*, 155 S.W.3d 144, 148 (Tex. Crim. App. 2004) (addressing State questioning defense counsel); *Garrett* 2009 WL 2365621, at *2 (explaining that same analysis is applied when defense counsel tries to question prosecutor).

Regarding the absence of a feasible alternative, we note that there were other alternatives to calling the prosecutor as a witness. As set out above, Montiel was seeking to have the prosecutor testify about a statement made by B.M. to the prosecutor, and B.M. was testifying when he made the request. *See Garrett*, 2009 WL 2365621, at *2 (noting that defendant failed to meet first prong where "the complainant could have testified to the same facts that appellant sought to elicit from" prosecutor). Additionally, during a pretrial hearing regarding this issue, the State explained that there was another witness to the conversation because a victim advocate was present when B.M. made the statement regarding an allegation of abuse involving oral sex. Moreover, we do not believe that Montiel has shown that the prosecutor's testimony was essential to his defense. *See Flores*, 155 S.W.3d at 149. During his cross-examination of B.M., Montiel was able to present his theory that B.M. had previously made prior statements that were inconsistent with the sexual abuse that she described. For example, B.M. admitted that around the time that the sexual abuse was allegedly occurring, she filled out a form for her alternative school stating that she had never been sexually assaulted or felt as though she were in danger of being sexually assaulted.

Accordingly, the trial court did not abuse its discretion by denying Montiel's request to question the prosecutor. *See Garrett*, 2009 WL 2365621, at *2.

For these reasons, we overrule Montiel's second issue on appeal.

14

**Prior Convictions**

In his final issue on appeal, Montiel presents several related arguments concerning sixteen exhibits that were admitted during the punishment phase. Those exhibits pertained to prior convictions from Whiteside County, Illinois. The first exhibit was a copy of the criminal history for "Reymundo Montiel Jr.," and the remaining exhibits are judgments and other accompanying documents relating to prior convictions for "Reymundo Montiel Jr." or "Reymundo Montiel." Four of the previous convictions were listed in the enhancement paragraphs of the indictment alleging that Montiel had previously been convicted of four felony offenses of aggravated battery, and the jury charge for the punishment phase instructed the jury to consider whether Montiel was previously convicted of two of those prior felony offenses when determining whether his punishment range should be elevated. *See* Tex. Penal Code § 12.42(d). Those prior convictions were admitted as State's exhibits five, eight, sixteen, and seventeen.

In his first set of arguments in his final issue, Montiel contends that the exhibits lacked sufficient identifiers linking those convictions to him. More specifically, Montiel argues that some of the exhibits lacked fingerprints, photographs of the defendant, and relevant dates. In addition, Montiel asserts that the indictment in the current case listed his name as "Reymundo Montiel" but that many of the exhibits were records for "Reymundo Montiel, Jr." Although Montiel mentions in this set of arguments that the exhibits should not have been admitted, his arguments seem focused on whether there was sufficient evidence to support the jury's determination that he had previously been convicted of two felony offenses when the jury assessed his punishment, and the case that he primarily relies on addresses a sufficiency challenge to the evidence supporting the jury's determination that enhancement allegations were true. *See Flowers v. State*, 220 S.W.3d 919, 925 (Tex. Crim. App. 2007). Accordingly, we will

15

construe this set of arguments as a challenge to the sufficiency of the evidence linking Montiel to the prior felony convictions listed as enhancement allegations. *See Bridges v. State*, No. 02-06-00418-CR, 2007 WL 2693902, at *3 (Tex. App.—Fort Worth Sept. 13, 2007, pet. ref'd) (mem. op., not designated for publication).

When reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers*, 220 S.W.3d at 921. "No specific document or mode of proof is required to prove these two elements." *Id.* "While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways," including through the defendant's stipulation or admission, through testimony by a person who observed the defendant being convicted and

16

can identify the defendant as the person previously convicted, or through documentary proof that contains sufficient information to establish the existence of the prior conviction and the defendant's identity as the person previously convicted. *Id.*

Links to the defendant can be shown through different means, including allowing the jury to compare photographs with the appearance of the defendant at trial or compare identifying information such as names, sexes, heights, eye colors, and dates of birth. *See Williams v. State*, 946 S.W.2d 886, 895 (Tex. App.—Waco 1997, no pet.). "A prior conviction can be proven by the introduction of the 'pen packet,' which is the file from the penitentiary where the defendant was an inmate and which contains the record of the inmate's prior conviction," provided that the pen packet not only proves the existence of a conviction but also links the conviction to the defendant. *Bridges*, 2007 WL 2693902, at *3. Provided that the proof of identity is sufficient, no error will be found on appeal. *Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984).

Before the exhibits mentioned above were admitted into evidence, the trial court admitted as an exhibit the booking sheet for the offenses at issue in this case. The booking sheet, like the indictment, lists the name "Reymundo Montiel." The booking sheet also lists Montiel's date of birth and social security number and includes a physical description of him. In addition, the booking sheet contains Montiel's fingerprints; identifies his alias as Reymundo Montiel, Jr.; and bears Montiel's signature, which he signed as "Reymundo Montiel, Jr." The booking sheet also contains photographs of Montiel.

As set out above, the judgments and accompanying documents corresponding to the enhancement allegations were admitted into evidence through State's exhibits five, eight, sixteen, and seventeen. Those exhibits and others were admitted through the testimony of

17

Grantham, who was an investigator for the district attorney and who had received training in fingerprint identification. The exhibits all contain a certification from the circuit clerk for Whiteside County, Illinois, stating that she is the keeper of records for the court and that the documents are "true and correct" copies of the documents related to the prior convictions. *Cf. Flowers*, 220 S.W.3d at 921 (noting that certified copies of final judgment and sentence is "a preferred and convenient" way of proving prior conviction).

State's exhibit eight contains a complaint and judgment of conviction for "Reymundo Montiel" for the offense of aggravated battery. In the plea paperwork for that offense, the defendant signed his name as "Reymundo Montiel Jr." as Montiel did in the booking sheet in this case. Although the exhibit did not include the date of birth for the defendant, it did list the date of the defendant's conviction and the defendant's age when he was convicted. State's exhibit seventeen contains a complaint and judgment of conviction for the offense of aggravated battery for "Reymundo . . . Montiel Jr." The name appearing on the paperwork and judgment is "Reymundo Montiel," but the signature on the plea paperwork is for "Reymundo Montiel Jr." The date of birth listed in the exhibit is the same as Montiel's as it appears in the booking sheet for this case. State's exhibit sixteen contains a complaint, plea paperwork, and judgment of conviction for "Reymundo Montiel" for the offense of aggravated battery. The exhibit lists the defendant's date of birth as being the same as Montiel's. State's exhibit five contains, among other documents, a complaint and a judgment of conviction for aggravated battery for "Reymundo . . . Montiel, Jr." and specifies that the defendant's date of birth is the same as Montiel's.

In addition to the exhibits discussed above, the trial court admitted other exhibits during Grantham's testimony that helped link Montiel to the four prior felony convictions.

One of those exhibits was State's exhibit two, which is an Illinois criminal history that lists all known convictions for a defendant named Reymundo Montiel, Jr., with the same date of birth as Montiel's. The circuit clerk certified that the computer printout is "a true and correct copy of the original document as the same appears in the records on file in my office." *Cf. id.* at 925 (determining that "a certified copy of a computer printout" from trial court setting out prior conviction "was sufficient" when considered in conjunction with another exhibit "to prove beyond a reasonable doubt the existence of" prior conviction). In his testimony, Grantham explained that the four prior aggravated-battery convictions discussed above were listed in the criminal history and that each of the four entries for those convictions separately listed a date of birth for the defendant, that the dates of birth were all the same, and that Montiel has the same date of birth.

Another linking exhibit was State's exhibit four, which is a pen packet for a conviction for "Reymundo Montiel, Jr." Although the entire exhibit was not certified by the circuit clerk, the judgment included in the pen packet contains a certification from the circuit clerk stating that the judgment is "a true and correct copy of the original document as the same appears in the records on file in my office," and the pen packet reflects that it was prepared by the record supervisor for a correctional center in Illinois. The date of birth and social security number listed in the exhibit are the same as Montiel's. The exhibit also contains photographs and a physical description of the defendant and a fingerprint card of the defendant's fingerprints. While testifying, Grantham explained that he had received training in fingerprint identification, compared the fingerprints from Montiel's booking sheet with the fingerprints in State's exhibit four, and had no doubt that the fingerprints belonged to the same person. Further, Grantham testified that the photographs from Montiel's booking sheet and from State's exhibit four

19

appeared to be photos of Montiel. Additionally, Grantham related that the offense pertaining to the pen packet was listed in the criminal history from Illinois.

Given our standard of review and considering the reasonable inferences that the jury could have made from this evidence, we conclude that the jury could have reasonably inferred that the individual who is the subject of the four prior aggravated-battery convictions was Montiel and, accordingly, that the evidence is legally sufficient to link Montiel to the felony convictions identified in State's exhibits five, eight, sixteen, and seventeen. *See id.*

To the extent that Montiel is asserting in this issue that the trial court erred by admitting all sixteen exhibits because they were not properly authenticated, we cannot sustain this appellate complaint. Appellate courts review a trial court's decision regarding the admission of evidence over an authentication objection under an abuse-of-discretion standard. *See Hunter v. State*, 513 S.W.3d 638, 640 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The authentication of evidence is a condition precedent to the admissibility of the evidence. *See* Tex. R. Evid. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Under the Rules of Evidence, the proponent must "make a threshold showing that would be 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Tienda*, 358 S.W.3d at 638 (quoting Tex. R. Evid. 901(a)). Whether the proponent has crossed the evidentiary threshold is a preliminary determination for the trial court, but the jury must determine whether the "item of evidence is what its proponent claims." *Tienda*, 358 S.W.3d at 638. "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.*

20

"Rules of Evidence 901 and 902 govern the authentication requirement." *Jones v. State*, 572 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Rule 901 sets out a non-exhaustive list of examples of the types of extrinsic evidence that will satisfy the authentication requirements. Tex. R. Evid. 901(b). For example, Rule 901 allows evidence to be authenticated through expert testimony comparing the evidence with another specimen. *Id.* R. 901(b)(3).

In contrast, Rule 902 identifies certain types of evidence that are self-authenticating and do not need extrinsic evidence of authenticity. *Id.* R. 902. "A document may be authenticated under either Texas Rule of Evidence 901 or 902 and need not be authenticated under both." *Jones*, 572 S.W.3d at 848. "[M]eeting the requirements of one part of Rule 902 establishes the documents are self-authenticated." *Id.* Rule of Evidence 902 allows for self-authentication of copies of "an official record—or a copy of a document that was recorded or filed in a public office as authorized by law" if the copy is certified as correct by the custodian or another person authorized to make the certification. Tex. R. Evid. 902(4). The Rules define "record" to include "a memorandum, report, or data compilation." *Id.* R. 101(h)(4).

Except State's exhibit two, which is the criminal history, and State's exhibit four, which is a pen packet, the remaining exhibits contain certified copies of judgments and other accompanying documents for prior offenses committed by an individual with Montiel's first and last name in Whiteside County, Illinois. The certifications were made by the circuit clerk, contained her and her deputy clerk's signatures, and specified that she is the "keeper of the records, files[,] and seal" and that the judgments of conviction along with other accompanying documents were "true and correct" copies.

21

By certifying that she was the "keeper" of the original files, the clerk demonstrated that she was a "custodian" of those records as contemplated by Rule of Evidence 902. *See id.* R. 902(4); *Jones*, 572 S.W.3d at 849. Moreover, the circuit clerk certified that the documents in the exhibits were "true and correct" copies of the criminal records as required by Rule 902. *See* Tex. R. Evid. 902(4). Accordingly, the trial court would not have abused its discretion by determining that the fourteen exhibits met the requirements of Rule 902. *See id.* R. 101(h)(4), 902(4); *Jones*, 572 S.W.3d at 849.

As discussed previously, the first exhibit was a criminal history compilation for "Montiel, Reymundo Jr.," and listed convictions for that individual from Illinois. The exhibit contains a certification from the same circuit clerk who was the custodian of the records listed above stating that the clerk "hereby certif[ies] the foregoing to be a true and correct copy of the original document as the same appears in the records on file in my office." Moreover, this exhibit is a compilation of the offenses set out in the exhibits above. Based on this record, the trial court would not have abused its discretion by determining that this exhibit also met the requirements of Rule 902 and was self-authenticating under that rule. *Cf. Flowers*, 220 S.W.3d at 922-23 (noting that "[a] computer-generated compilation of information setting out the specifics of a criminal conviction that is certified as correct by the county or district clerk of the court in which the conviction was obtained is admissible" as self-authenticating under Rule 902).

Regarding State's exhibit four, that exhibit does not contain the type of certification described above. Instead, the exhibit included a letter from the record supervisor from a correctional facility in Illinois stating that the pen packet contained the requested information pertaining to Montiel, but the exhibit also included a judgment with a certification from the circuit clerk stating that the judgment was a true and correct copy of the judgment

22

from the records in her office. *Cf. Jones*, 572 S.W.3d at 849 (concluding that pen packets from another state were self-authenticating). In any event, exhibit four contained photographs of the defendant that could be compared with the photographs from Montiel's booking sheet and with his appearance at trial, and Grantham explained that the fingerprints contained in exhibit four and in Montiel's booking sheet were from the same person. *See Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991) (determining that authenticity of pen packet was "corroborated by the testimony of the State's expert witness who stated that the fingerprints from the fingerprint card in the pen packet and the fingerprints taken from the appellant on the morning of the punishment hearing were made by the same individual, the appellant"); *Cooks v. State*, No. 05-02-01809-CR, 2004 WL 42612, at *1 (Tex. App.—Dallas Jan. 9, 2004, no pet.) (op., not designated for publication) (concluding that trial court did not abuse its discretion by admitting evidence of prior conviction where each exhibit contained certified copy of judgment and where fingerprint expert testified that fingerprints in exhibits and defendant's known fingerprints were same). Accordingly, the trial court would not have abused its discretion by concluding that the exhibit was sufficiently authenticated consistent with Rule of Evidence 901. *See* Tex. R. Evid. 901; *Reed*, 811 S.W.2d at 587.

In this issue, Montiel also contends that the trial court erred by allowing Grantham to testify as an expert on fingerprint identification. Under Rule 702, a trial court may admit expert testimony "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. Before a witness may testify as an expert, the trial court must make three separate inquiries: (1) is the witness qualified "as an expert by reason of his knowledge, skill, experience, or education"; (2) is "the subject matter of the testimony . . . an appropriate one for expert

23

testimony"; and (3) would "admitting the expert testimony . . . actually assist the fact-finder in deciding the case." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim App. 2006) (quoting *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id.* Appellate courts review a trial court's ruling on the admissibility of scientific expert testimony under an abuse-of-discretion standard. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

During the hearing addressing the admissibility of Grantham's testimony, Montiel limited his arguments to Grantham's qualifications, and his arguments on appeal are similarly aimed at his qualifications. Accordingly, in resolving this issue, we need not address the reliability and relevancy prongs. *See Turner v. State*, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (determining that objection to expert witness's qualifications did not preserve for appellate review claim that expert opinion was scientifically unreliable); *see also Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005) (explaining that fingerprint comparison testimony is generally admissible under Rule 702 "because it is reliable and it assists the trier of fact in its task of determining whether" fingerprint is that of particular person).

Before the trial court made its ruling, Grantham explained that he is an investigator and that his job requires him to collect judgments from other jurisdictions and to compare sets of fingerprints. In addition, Grantham testified that he is certified in basic fingerprint identification by the Texas District and County Attorneys Association. Although Grantham agreed that the Association is an advocacy group and that he did not receive his certification through the Department of Public Safety or the FBI, he related that he is qualified as a fingerprint-identification expert for ink comparisons, that he received his training from the fingerprint expert for the Bexar County Sheriff's Office, and that the expert certified him. *Cf.*

24

*Dominguez v. State*, No. 08-13-00143-CR, 2015 WL 1137742, at \*4 (Tex. App.—El Paso Mar. 11, 2015, no pet.) (op., not designated for publication) (observing that certification from FBI is not required to testify as fingerprint expert); *see also Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) (upholding trial court's ruling allowing witness to testify even though witness was not "licensed" because witness had specialized knowledge from education and practical experience). Accordingly, we conclude that the trial court did not abuse its discretion by determining that Grantham was qualified to testify as an expert on fingerprint identification.

For these reasons, we overrule Montiel's third issue on appeal.

## CONCLUSION

Having overruled all of Montiel's issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed: May 21, 2021

Do Not Publish