**Affirmed and Memorandum Opinion filed October 26, 2021.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-19-00295-CR**

---

**BRITTANY  CNAE  MCCUTCHEON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 18-CR-0917**

---

## MEMORANDUM  OPINION

Appellant Brittany Cnae McCutcheon appeals her conviction for engaging in organized criminal activity by committing the underlying offense of fraudulent possession of fifty or more items of identifying information, in combination with others. Appellant asserts that she received ineffective assistance of counsel.  We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Some retail stores like Kohl's permit a person to make purchases using a store credit card even when the customer leaves the card behind. It's an old-fashioned convenience that pre-dates Apple Pay. With a customer's social security number and driver's license as proof, the store will look up and verify a customer's store credit card account and charge the customer as if they had the card with them. This is how appellant purchased a Bulova watch at the League City Kohl's.

And while appellant was permitted to make the transaction, she was "red-flagged" because, in the course of the process, she presented an out of state license. The cost of the item, the out-of-state license, and the fact that appellant had to consult her phone to recite her own social security number prompted the jewelry department supervisor, Lacy Brychta, to question the transaction and alert loss prevention.

After the store was alerted of possible suspicious activity, appellant was monitored and observed to then go purchase a $500 gift card from another register. When David Ruiz, Kohl's asset protection manager, was alerted to observe appellant from the monitors in the loss prevention office, he recognized appellant as a person identified in a BOLO (be on the lookout) notice he had received a week earlier. He noticed two other individuals with appellant, but they disappeared as she went to the back of the store. Ruiz noticed the group talked amongst themselves before the other two left. Ruiz called the police.

Officer Michael Guzman of the League City Police Department responded to the call of a potential fraud in progress. He met with Ruiz and another store employee at the front entrance and was advised appellant was still in the store.

When Guzman approached appellant and asked for her ID, she retrieved a

2

small purse and thumbed through the purse, revealing several different IDs from different states, before providing her Texas ID. Guzman ran the Texas ID through dispatch and confirmed several active warrants on appellant. Appellant identified herself as Brittany McCutcheon.

Guzman placed appellant in handcuffs and led her to the loss prevention office. Guzman arrested appellant, and believes that he read appellant her *Miranda* rights, but could not be sure. He said generally, when he handcuffs someone, he reads them *Miranda* rights immediately, but he could not remember this particular occasion. Guzman said appellant made no statement. Ruiz confirmed that appellant remained silent while in the office. Ruiz testified that he thought the officer read the appellant her *Miranda* rights when they were in the office, but agreed that appellant already had handcuffs on when Guzman brought her back to the office. The Police Department did not retain the body cam footage and Kohl's did not retain its surveillance footage from the day of the incident.

Guzman said he searched her purse incident to arrest and found two fictitious state IDs that contained appellant's face and someone else's name and date of birth. Additionally, Guzman found a $200 Kohl's gift card and a blank VISA card in the name of "William Law". Believing that more information was contained on appellant's cell phone, Guzman seized the cell phone and placed it into evidence, pending a search warrant.

On March 22, 2018, appellant was indicted for the offense of engaging in organized criminal activity, namely fraudulent possession of identifying information.

When cross examined by appellant's counsel at trial, Guzman agreed that he obtained appellant's phone passcode subsequent to her arrest, but only at appellant's request so she could get some telephone numbers. Guzman stated he

3

never searched the phone until after obtaining a warrant. Guzman said the date of the search warrant was eleven days after her arrest. Guzman explained that he performed the entire task of retrieving those numbers for appellant in her presence before shutting off the phone and placing it back in the loss prevention bag and that this was his only contact with the phone prior to the execution of the warrant.

The evidence and forensic manager with the League City Police Department testified that after a search warrant was issued for the phone's data, he used a forensic tool to extract call records, text messages, chat messages, images, websites visited on the phone, as well as contact names and numbers.

Through the officers' testimony, significant information was obtained from the phone and offered into evidence in support of the State's case. As conveyed through Guzman, the phone informed that

- Appellant would purchase and receive personal identifying information from the dark web.

- Through various people like Latasha Krauth, appellant would send the identifying information to others and get physical IDs made with appellant's picture and someone else's name, date of birth and social security number.

- Appellant and others would purchase merchandise and sell it at a discount. Appellant was involved with other participants which included Latasha Krauth, a male named Eric, a woman named Ma, a woman named Puney, and a man named Shake.

- Latasha was acting as a look-out for appellant at Kohls. Appellant and Latasha texted each other throughout the transaction at Kohls and those text messages were recovered.

- Latasha and appellant passed texts, sharing different names, dates of birth, addresses, credit card numbers, expiration dates, security codes, phone numbers and social security numbers.

- Eric, appellant's brother, made fraudulent purchases and provided appellant the merchandise to off load and sell at a

4

discounted price. Eric procured physical IDs and provided them to appellant and Latasha. Eric also received proceeds and money from the illicit activities.

- Shake was a facilitator for the gift cards and some merchandise, converting it into cash. Shake employed others that returned merchandise to retailers and received cash back. Guzman referred to these people as "returners," according to the text messages.

- The money flowed from appellant to Latasha, Shake to appellant, Eric to appellant, and appellant to her mother.

The State's investigator testified that she was provided information on all the names, dates of birth, social security numbers, driver's license, and addresses extracted from appellant's phone in this case. She said that she ran each name and verified that the names and addresses matched; that they were real people and had real social security numbers. Three of these people testified at trial. Each testified that their names, dates of birth, social security numbers, and driver's licenses matched the information contained on appellant's phone. Each testified that they did not know appellant or grant her permission to use their respective identifying information.

The first issue in this appeal concerns the State's trial counsel's closing argument. While explaining the legal standard for finding a "Combination" which the charge states means "three or more person who collaborate carrying on criminal activities" he made the following comment:

That's why this is an engaging case. She's working with Tasha, Ma and Eric and Puney and Shake and the way the offense is worded it has to be the defendant working with two or more other people. But you as a jury you don't all have to agree on who the three people were. You have to agree there were at least three people involved in this criminal organization. So jurors #1 and #2 may believe this operation was primarily the defendant, Tasha and Eric. And juror #12

5

may believe the operation was mainly the defendant, Shake and Ma. That's fine. **Many of you believe like I do, that all six of these people were involved.** They were absolutely involved. As the charge will instruct you, the law doesn't require that all members of the organization know each other or work directly with each other….

Appellant's trial counsel did not object to the bolded comment.

The second issue in the case concerns appellant's trial counsel's own comments in closing argument:

One, there is an issue of *Miranda* which is always questionable for us as attorneys as far as if you read *Miranda* rights versus not reading it. If he took her purse and took her phone before she was actually placed in custody. Of course, all we have is his word. We don't have any video which would be helpful. All we have is his word. So you know it's our contention there may be some issues within a reasonable search and seizure.

In the State's concluding arguments it glossed appellant's trial counsel's *Miranda*-related arguments as a non-issue merely raised to confuse the jury. He explained, "You heard from Officer Guzman multiple times; [appellant] did not make a statement."

The jury found appellant guilty of the offense of engaging in organized criminal activity as charged in the indictment.

During punishment, the State presented evidence of ten prior convictions, including one that enhanced the punishment. Appellant pled true to the enhancement. The remainder of appellant's prior convictions included five misdemeanors and four state jail felonies. The State also provided evidence that appellant had been out on parole for only three months before she committed the current offense and that she was attempting to fraudulently obtain a firearm through a third party so she could work as an armed security guard.

Through cross-examination, appellant's trial counsel elicited information

that appellant was not violent or disruptive when she was arrested, that she had four children and she had made efforts to find a job other than the security guard job. The State rested its case. Appellant's trial counsel rested and explained she had attempted reach appellant's brother, and that he had not responded to her. In closing, the State asked for life in prison. Appellant's trial counsel asked for leniency of fifteen years, based on her being a mother of four children, the non-violent nature of her crime, and the fact that no one was physically harmed by her conduct.

The jury sentenced appellant to 30 years confinement with the TDCJ and a $1000.00 fine. A motion for new trial was not filed. This appeal followed.

## II. ISSUES AND ANALYSIS

In her first and second issues, appellant claims she received ineffective assistance of counsel during the guilt-innocence phase of trial because (1) her attorney failed to object to a prosecutor's comment in closing argument and, (2) her attorney alluded to a *Miranda* violation in closing argument, without first moving to suppress or requesting an appropriate instruction. In her third issue, she claims that she received ineffective assistance of counsel during the punishment phase of trial because her trial counsel did not present any mitigating evidence.

## A. Appellate Review of Ineffective Assistance Complaints on Direct Appeal

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051 (Supp.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on her ineffective-assistance-

of-counsel claims, appellant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability that but for counsel's alleged deficiency the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, any allegation of ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain counsel's actions before the court finds counsel ineffective. *Id.* In most cases, a direct appeal proves an inadequate vehicle for raising an ineffective-assistance claim because the record generally stands undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

A sound trial strategy may be executed imperfectly, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel.

*Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Though counsel's conscious decision not to object to evidence is not insulated from review, unless the defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel generally will not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

**B. Did appellant's trial counsel render ineffective assistance for failing to object to the prosecutor's expression of personal opinions during closing arguments?**

In her first issue, appellant asserts that her trial counsel rendered ineffective assistance because she did not object to the prosecutor's statement — "*[m]any of you believe like I do, that all six of these people were involved.*" — as an improper opinion injected over the issue. The prosecutor made the statement in the context of explaining the charge to the jury--that each juror only had to believe the appellant conspired with two or more of the co-conspirators. Proper jury argument generally falls within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

The prosecutor's comment "many of you believe *like I do*" is a personal opinion, and as such is improper. *See Beltran v. State,* 99 S.W.3d 807, 811 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding that prosecutor's statement that "[i]f I believed the man was not guilty I wouldn't be here" was improper). One rationale courts have stated for this rule is that the opinion improperly conveys the idea that the prosecutor has a basis for such an opinion outside the evidence

presented at trial. *Williams v. State,* 417 S.W.3d 162, 172 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). We are doubtful that, in a context such as here where the prosecutor's expressed personal opinion directly followed his reference to trial exhibits implicating all six co-conspirators' participation, the jury believed the prosecution's 'belief' was based on something other than the evidence to which he had just referred them. In short, in a case such as this, where the rationale for the rule is not served, the trial court may have properly exercised its discretion in overruling an objection to the prosecutor's statement.

But even presuming that the prosecutor's statement was improper as to result in the reasonable expectation that the trial court would sustain the objection, if appellant's trial counsel made a deliberate decision not to object, we cannot conclude that such a decision was categorically unreasonable. Appellant cites no authority for the proposition that a failure by trial counsel to object to purported improper jury argument, standing alone, would be "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. In fact, we have recognized that the failure to object to improper jury argument may be based on a reasonable trial strategy: to avoid drawing attention to the prosecutor's statement. *Lopez v. State*, 565 S.W.3d 879, 887 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *See Orellana v. State*, 489 S.W.3d 537, 550 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Appellant has not met her burden to rebut the presumption that counsel's actions were motivated by sound trial strategy by not objecting when appellant claims that counsel should have. *See Perez v. State*, 56 S.W.3d 727, 731 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (explaining that the appellant has the burden to rebut presumption of sound trial strategy with evidence).

We overrule appellant's first issue.

10

**C. Did appellant's trial counsel render ineffective assistance by commenting about a *Miranda* violation, or alternatively for not taking steps earlier?**

Appellant's second complaint is layered with subordinate parts that are distinguishable enough to demand separate attention. Her primary contention is that her trial counsel rendered ineffective assistance because of a statement she made in closing argument about "a lack of *Miranda* warning in connection with the defendant's *statement*." She points out that one officer testified that appellant was read her *Miranda* warning. Under this complaint, she argues her counsel was ineffective in the earlier phases of trial because she neither moved to suppress any statement obtained in violation of *Miranda*, nor did she request an instruction under article 38.23 of the Texas Code of Criminal Procedure. Whichever the complaint, our conclusion is the same.

Appellant does not attempt to identify the statement (or any other evidence) to which she refers. As the State points out, the trial record reveals that the only "statement" appellant made to the police in connection with her apprehension and arrest was her approval to unlock her already seized phone so that the police could relay to her phone numbers stored in her phone so she could call her family members while in custody. This statement was elicited from the testifying officer in cross-examination; he stated that appellant initiated the discussion by requesting to have her cell phone. The State did not offer this statement or any other statement from appellant into evidence. From our record, it would appear that no statement was made by appellant concerning the facts of the offense. It also was established that password that she provided was not used by the police to access any other information on her phone at any other time. Appellant's phone, which was the source of significant evidence, was not searched until ten days after her arrest pursuant to a warrant.

Two officers testified that they believed that appellant was read her *Miranda* rights. Neither officer had a record to refer to support their assertion and expressed that their belief was connected to routine. No evidence was offered to contradict their statements.

*Motion to Suppress*

To the extent that appellant argues that her counsel was ineffective for failing to file a motion to suppress a statement, her argument lacks support in the record. A person who is questioned by a police officer after she is taken into custody or otherwise deprived of her freedom of action in any significant way must first be warned that she has a right to remain silent, that any statement she does make may be used as evidence against her, and that she has a right to the presence of an attorney, either retained or appointed. *Miranda v. Arizona.*, 384 U.S. at 436, 444, 86 S.Ct. 1602 (1966). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528 (1994). To prevail on this complaint, the record on direct appeal must affirmatively prove appellant's motion to suppress would have been granted. *Jackson v. State,* 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). To meet her burden, appellant was required to produce evidence that would defeat the presumption of proper police conduct. *Id.* at 957; *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In the absence of a statement or evidence to suppress, the appellant has not affirmatively shown by a preponderance of the evidence that any motion to suppress would have been granted. *See id.*

*Failure to request article 38.23 Instruction*

Likewise, to the extent that appellant complains that her counsel was ineffective for failing to request an instruction under article 38.23 of the Texas Code of Criminal Procedure, we conclude such complaint unavailing. A trial court is required to include an Article 38.23 instruction only if the trial evidence raised a factual issue concerning whether the evidence was obtained in violation of the federal constitution or the Texas Constitution or any of its laws. *Ramirez v. State*, 76 S.W.3d 121, 128 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); Tex. Code Crim. Pro. Ann. art. 38.23. Because appellant has not shown she was entitled to an instruction under article 38.23, her trial counsel's failure to request such an instruction is not ineffective assistance. *Cummings v. State*, 401 S.W.3d 127, 132 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

*Silent Record*

Because no motion for new trial was filed, there is no record of appellant's trial counsel's explanation for her comment in closing or her decisions not to suppress or seek an instruction with respect to any statement. Even if we assume appellant's attorney concluded that appellant's exchange permitting the officer to open her phone was subject to *Miranda*, that *Miranda* warnings were not given, and that such statements could have been suppressed or that a court would have suppressed, we cannot conclude that appellant's trial counsel's failure to act on such and seek the exclusion or an instruction with respect to the evidence in question — with no discernable bearing on her offense or the seizure of her cell phone data — was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Even if she lacked a statement to suppress or seek a 38.23 instruction, her counsel may have strategically sought to engulf the jury in suspicion of police misconduct to distract them from weaknesses in her

client's case.

Therefore, we overrule appellant's second issue.

**D. Did appellant's trial counsel render ineffective assistance for failing to present mitigating evidence during the punishment phase?**

In her third issue, appellant complains that her trial counsel was ineffective in failing to present any mitigating evidence at the punishment phase. Other than her general complaint, appellant has not added significant detail in support; she has neither identified any particular evidence or category of mitigating evidence available to her counsel that she omitted, nor has she addressed her counsel's reasoning behind this decision not to offer any evidence. A hearing on a motion for new trial would have given the parties and opportunity to present evidence to shed light on these subjects. However, as set out in previous parts of this opinion, when the record is silent as to trial counsel's strategy, we will not conclude the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We cannot reach such a conclusion in this case.

Appellant even notes in her brief that "this issue may be more appropriately developed through a state writ of habeas corpus" and concedes that under a silent record "her trial counsel reasonably could have determined that the potential benefit of additional witnesses was outweighed by the risk of unfavorable counter-testimony." This latter point bears particular application to this case because in addition to the State's evidence of 10 prior convictions, text messages from appellant's phone showed appellant's criminal ideas and thinking in the three months since she was last released. These communications illustrated that she spoke in a derogatory manner to others about the parole system and she actively

sought out other criminals to establish her criminal enterprise.

When the Court asked appellant's attorney if she had any witnesses, she responded, "We attempted to gather a witness, which is actually her brother. We haven't heard back from him. So at this time we rest." Prior to resting, her counsel demonstrated a willingness elicit mitigating testimony. She elicited testimony that appellant was non-violent, that she had attempted to get work by means other than stealing and defrauding others, and she attempted to elicit testimony that appellant was a mother of four children. On this record, without and further explanation about her trial counsel's decision-making, it is not clear what other witnesses and evidence were available to her trial counsel and her decision-making process with respect any available evidence, and what other external limitations beyond her control may have been placed on appellant's counsel. *Jones v. State*, 572 S.W.3d 841, 850–51 (Tex. App.—Houston [14th Dist.] 2019, no pet.)(concluding that shortcomings of a silent record prevented meaningful consideration of first *Strickland* prong in failure-to-present-mitigating evidence ineffective assistance complaint on direct appeal); *see also Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (trial counsel not ineffective for not presenting more mitigating evidence in capital murder trial when on appeal defendant did not specify what evidence should have been presented).

For the foregoing reasons, we overrule the third issue.

### III. CONCLUSION

Appellant's three ineffective-assistance-of-counsel arguments provide no basis for appellate relief. Accordingly, we overrule appellant's complaints and affirm the trial court's judgment.

/s/    Randy Wilson
Justice

Panel consists of Justices Jewell, Spain, and Wilson (Spain, J., concurs without opinion).

Do Not Publish — Tex. R. App. P. 47.2(b).